## FRED MONTESI v. BERNARD PATTON.

Western Section.   July 3, 1929.

Petition for Certiorari denied by Supreme Court, March 1, 1930.

Holmes, Canale, Loch & Glankler, of Memphis, for plaintiff in error.
Wilson, Gates & Armstrong, of Memphis, for defendant in error.

OWEN, J. Fred Montesi, hereinafter called defendant, has appealed from a judgment rendered against him in the circuit court of Shelby county. The plaintiff sued the defendant for a willful, wanton and malicious assault and battery committed upon the plaintiff. The plaintiff alleged painful and permanent injuries and also sought to recover both compensatory and punitive damages. The suit was commenced October 20, 1917. The defendant filed a plea of self-defense, on April, 1928, the cause was submitted to a jury and the jury returned a verdict in favor of the plaintiff and fixed his damages at $25. The trial judge set this verdict aside on the ground that the verdict was inadequate. There was a second trial in December, 1928, the jury returning a verdict in favor of plaintiff and fixed his damages at $2500. Upon a motion for a new trial by the defendant, the trial judge, Honorable A. B. Pittman, who had presided at both trials, ordered a remittitur of $1000 and overruled the motion for a new trial. The remittitur was accepted under protest. The defendant appealed and has assigned ten errors. The plaintiff assigned the action of the court in allowing the remittitur of $1000. By the errors assigned by the defendant, it is first, insisted, that there is no evidence to support the verdict.

(2) That the verdict is excessive.

(3) That the testimony of the plaintiff given in the instant case is in direct conflict with, and a contradiction of, his testimony given in the previous trial on material matters.

(4) & (5) The court should have allowed the transcript of plaintiff's testimony at the former trial to be introduced at the present trial to show plaintiff's contradictions.

(6) The court erred in admitting the following questions and answers of the witness, Dr. J. F. Frazier, witness for plaintiff:

"Q. From your prognosis, doctor, would you say that a person who has suffered the fractures that you have detailed, would be likely—fractures that were suffered by young Mr. Patton, would suffer much, or little, pain, in the future, and if so, for what length of time—if any pain, for what length of time? A. I would say that he would have a certain amount of pain from time to time, on through life, from acute infections namely, the head colds or rhinitis, or sinus infection, that a physical defect, or defects, inside of the nose would be caused.

"Q. Doctor, this suffering which you have described, would it, in your opinion, be present, from your examination of young Mr. Patton, throughout his life? That is to say, the life of Mr. Bernard Patton, the plaintiff in this law suit? A. It would."

The 7th assignment complains of the court excluding from the deposition of Dr. John J. Shea, witness, a hypothetical question and the answer thereto by which hypothetical question it was sought to contradict the testimony of Dr. Frazier.

The 8th assignment complains of the court's charge which is as follows:

"If you believe from the evidence that the defendant Montesi first assaulted the plaintiff Patton, then I charge you that if after that time the plaintiff used no more force than was necessary, then the defendant is liable and nothing that took place prior to that time between plaintiff and defendant's child or children will prevent defendant from being liable and the happening between plaintiff and the defendant's child or children can only be considered upon the question of damages and upon the question of whether you will award punitive damages."

The 9th assignment complains of the court failing to instruct the jury to the effect that if the defendant was acting under such provocation as would ordinarily heat the blood or arouse the passions of a reasonable man, then, in that event, the jury should mitigate the damages which would otherwise be awarded the plaintiff.

The 10th assignment complains of the court failing to instruct the jury in reference to the law of self-defense.

The facts briefly stated are as follows: The plaintiff, at the time of the assault, was between eighteen and nineteen years of age. He was a medical student but at the time of the assault he was working for a filling station at the corner of Union avenue and Cleveland street in Memphis, Tennessee. The defendant is thirty-eight years of age, he weighs about 220 pounds. Plaintiff's weight is about 160 pounds. The defendant operated a grocery store next to the filling station.

On the day of the assault and battery complained of one of the defendant's sons, a boy about twelve or thirteen years of age, came into the filling station and after taking a drink of water attempted to throw some water on the plaintiff, following this the plaintiff either threw a few drops of oil on the boy or knocked an oil can from the shelf that spilled some oil on the boy's shirt, thereupon, the boy cursed the plaintiff, ran into his father's store and in his flight the boy threw a water can at the plaintiff. About that time a Mr. French came up and engaged the plaintiff in a conversation. While he was talking to French the defendant came out of his store, walked up to the plaintiff and struck the plaintiff a very severe blow breaking the plaintiff's nose. In the scuffle between the plaintiff and defendant the plaintiff was tripped or fell. The defendant took the plaintiff by the hair of his head and bobbed his head up and down striking it with much force on the paved street. Bystanders separated the plaintiff and defendant or rather pulled the defendant off of the plaintiff.

Plaintiff went into the filling station to wash the blood from his face and nose. Defendant went back into his store, soon closed up and went home.

Defendant and two of his witnesses testified that the defendant walked up to the plaintiff in a peaceful manner and the plaintiff struck the defendant without a warning. This conflict of evidence as to who was at fault or who began the fight was settled by the jury in favor of the plaintiff's theory. At the trial counsel for the defendant read questions and answers from the transcript of plaintiff's evidence, at the former trial, and asked plaintiff if such questions and the answers therein read were made by him at the former trial, he answered in the affirmative. In some of these he made explanations, in some he contradicted his former testimony. Some of these questions and answers and contradictions were immaterial and some were material.

The court properly charged the jury that they were the exclusive judges of the weight and credibility to be given to all the witness. He also instructed them as to the various ways by which a witness could be impeached. In the instant case we do not know what weight or credit the jury gave to the plaintiff's testimony but there is ample testimony to support the verdict if the jury had seen fit to utterly ignore plaintiff's testimony.

The jury settled, by their verdict, all the inconsistent testimony offered by the plaintiff and the verdict was approved by the trial judge, except as to the amount, and the weight and credit based upon plaintiff's testimony by the jury is now binding upon this court. Central Mfg. Co. v. Cotton, 108 Tenn., 63; Atken v. Shenker, Admr., 4 Higgins, 298.

As to the testimony of Dr. Frazier, the doctor made an examination of plaintiff's nose. An X-ray was made soon after the injury showing the fractured bones, and Dr. Frazier simply gave his opinion, as a medical expert, as to the nature of plaintiff's injuries. This evidence was competent and the assignment complaining of the evidence is overruled.

As to the exclusion of Dr. Shea's testimony, Dr. Shea had testified that he examined the plaintiff and he gave his opinion upon the same questions about which the plaintiff's doctor testified. Thereupon, defendant's counsel read from Dr. Frazier's testimony and upon objection the court said the questions were too complicated and calls for one witness to state whether the other witnesses had properly diagnosed the case. The court said to the counsel, when Dr. Shea was being examined: "You should ask this witness, give him the facts, and ask him what his opinion would be as to the permanency, or whatever it was you were driving at." No further questions were asked the witness and the court sustained for the reason stated in

the objection to Dr. Shea giving his opinion upon the correctness of Dr. Frazier's opinion. We think that this question and answer were properly excluded.

The assessments eight, nine and ten complain of the court's charge, there was no plea of provocations. In Byrd v. Bullion, 148 Tenn., 496, which was an assault case, our Supreme Court, in quoting from Caruthers History of a lawsuit said:

"In an action of trespass affecting the person, as assault and battery, the general issue amounts to a mere denial of the wrongful action and admits of no evidence of facts in justification. If, as a matter of fact, the defendant did not assault and beat the plaintiff, then the general issue would be the proper plea; but, if he did commit the assault and battery, and the real defense was that it was done in necessary self-defense, or under other circumstances of justification, then the general issue would be inapplicable, for none of these facts can be shown under it. The defendant in such case should abandon the general issue and present his defense by special plea."

The court also quotes from Shipman on Common Law Pleading, as follows:

"All defenses in justification and excuse, and in discharge, must be specifically pleaded in confession and avoidance in trespass."

In the instant case the defendant did not file a special plea of provocation but relied upon a plea of self-defense. There is no proof that the defendant was provoked. He testified that he went out to the filling station in a quiet way to see why oil had been poured on defendant's boy, he does not testify that his son stated that it was the plaintiff that poured oil on him. The happenings between the plaintiff and the defendant's son had ended some time before the assault.

The trial judge, in his charge, read the defendant's plea to the jury and told the jury that if the defendant struck the plaintiff in his necessary self-defense, they should find for the defendant. There was no special request offered by the defendant at the conclusion of the charge. It is well settled in this state, however, that the charge of a trial judge cannot be attacked on the ground that it is too meagre and if counsel consider it too meagre it is his duty to offer a special instruction dealing with the subject and if he fails to do so he is precluded from making complaint. Grace v. Curley, 3 Tenn. App. 1; Reed v. Hutton, 1 Tenn. App., 44; Railway v. Guinn, 88 Tenn., 321; Maxwell v. Hill, 89 Tenn., 584; Guaranty Society v. Ford, 104 Tenn., 533.

When defendant's motion for new trial is examined it is found that it does not even complain with regard to the failure further to charge upon the question provocation and self-defense.

We are of the opinion that the ninth and tenth assignments were not properly laid before the court on the motion for a new trial. Though a court affirmatively fails to set out the theory of a party correctly, this is not error unless it is called to the attention of the court by a special instruction correctly setting out the theory sought to have charged. Hosiery Company v. Napper, 124 Tenn., 155.

On the question of the verdict being excessive, the plaintiff's nose was fractured, his head was badly bruised, his nose bled profusely, he had to be taken to a doctor who placed splints upon plaintiff's nose. He was under the treatment of a physician for several days, and for months after his injuries he suffered from dull headaches, a tingling in his nose causing his eyes to water. There is some proof that this tingling sensation will be permanent.

It results that all the assignments of error offered by the defendant are overruled and disallowed.

As to plaintiff's assignment of error, plaintiff relies upon the case of Nashville Street Railway Co. v. Griffin, 104 Tenn., 80, and a number of other cases from other jurisdictions. In the Griffin case a young man of a delicate constitution was wrongfully ejected from a street car, he was pushed from the car into a pit and seriously injured. There was a verdict of $2500 which was affirmed by the Supreme Court in an opinion delivered by Mr. Justice Wilkes. No remittitur had been suggested and the Supreme Court affirmed the judgment holding that it was not excessive considering the indignities and the humiliation which the plaintiff, a passenger of the Street Railway, had suffered. Practically all of the cases relied upon in addition to the Griffin case, supra, are cases where a passenger was assaulted.

The trial judge in the instant case was not satisfied and would not approve a verdict for $2500. There is no fixed rule whereby damages for personal injuries can be mathematically calculated. In the instant case the trial judge saw the plaintiff and the defendant at the time of the trial, saw and heard all of the witnesses who testified. As the thirteenth juror, the trial judge's conscience would not allow him to approve of a greater verdict than $1500. We approve of the trial judge's action in ordering a remittitur in this cause under all the facts and circumstances of the case.

It results that the plaintiff's assignment of error is overruled. The plaintiff will recover of the defendant $1500 with interest thereon from the date of the judgment rendered in the circuit court and all the costs of the cause for which execution will issue. Execution will issue against the defendant and his surety on appeal bond for the costs of the appeal.

Heiskell and Senter, JJ., concur.